Lulu Nettie FOSTER, Appellant,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Appellee.

No. 16866.

United States Court of Appeals Eighth Circuit.

Feb. 21, 1963.

Allen Heald, Cedar Rapids, Iowa, for appellant. W. Howard Smith, Cedar Rapids, Iowa, was with him on the brief.

Jerry C. Straus, Atty., Dept. of Justice, Washington, D. C., for appellee. Joseph D. Guilfoyle, Acting Asst. Atty. Gen., Donald E. O'Brien, U. S. Atty., Sioux City, Iowa, and Alan S. Rosenthal and Jerry C. Straus, Attys., Dept. of Justice, Washington, D. C., were on the brief.

Before SANBORN, VAN OOSTER-HOUT and MATTHES, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is a timely appeal from final judgment of the district court upholding the determination made by the Secretary of Health, Education and Welfare, that the plaintiff Lulu Nettie Foster is not entitled to old-age benefits under the Social Security Act, 42 U.S.C.A. § 401 et seq., and from the court's denial of motion to remand for further consideration and additional evidence. The plaintiff has exhausted her administrative remedies. The district court and this court have jurisdiction. 42 U.S.C.A. § 405(g); 28 U.S.C.A. § 1291.

The principal issue presented is whether the Secretary and the district court erroneously determined that there was no arrangement for material participation by the plaintiff farm owner in the management of production of income from agricultural products.

The basic question presented is whether Mrs. Foster's income from operation of her farm qualified for "net earnings from self-employment" under 42 U.S.C.A. § 411(a) (1) as amended in 1956. Mrs. Foster has reported such income as self-employment income for 1956 and 1957 and paid the Social Security tax thereon. It is conceded that Mrs. Foster has met all the requirements for old-age benefits if her farm returns qualify as net earnings from self-employment.

At the administrative level, it was finally determined that the earnings from the farm did not qualify as self-employment income for two reasons: (1) There was no arrangement for material participation in the production or management of agricultural commodities. (2) There was in fact no material participation by plaintiff in the production or management of production.

The Secretary's second reason assumed that personal participation by Mrs. Foster was required and that participation by an agent could not be considered. The Secretary in his brief states:

"During the pendency of this appeal the Secretary has changed his position on the issue of 'vicarious participation' and, accordingly, no longer contends that appellant could not materially participate through an agent."

This is in accord with Harper v. Flemming, 4 Cir., 288 F.2d 61, and Henderson v. Flemming, 5 Cir., 283 F.2d 882.

The Secretary in oral argument conceded that for the purposes of this case the acts performed by the plaintiff's agent constituted material participation and that he was placing no reliance upon the determination of the referee that material participation was not established. Hence the material participation issue is no longer in the case.

Although the trial court discusses in its opinion the vicarious participation issue at length, it rests its affirmance of the Secretary's decision entirely upon upholding the Secretary's determination that no arrangement existed. The referee's decision, which became the final decision of the Secretary, is devoted large-

ly to the discussion of the vicarious participation issue, but discusses the arrangement issue briefly as follows:

"Other than the provision in the lease providing for the landlord's right to make decisions as to the crops which should be grown to maintain proper rotation, the Referee finds that the lease agreement between the tenant and the claimant does not contemplate that the claimant shall materially participate in the production of commodities grown on the farm. The lease provides for the landowner's right to determine what crops shall be planted and what type of seed shall be sown, but as to the planting, cultivation and harvesting, the lease merely provides that the tenant shall operate the farm and maintain it in a husbandlike manner."

The lease between the plaintiff and her tenant, the farm management contract between plaintiff and Midland Farm Management Company, a competent and reputable farm management agency, and reports as to Midland's managerial activities in relation to the farm, as well as other pertinent facts, are fully set out in the trial court's opinion reported at 190 F.Supp. 908, and we deem it unnecessary to set out in any detail such factual information.

■ The standards for review of the Secretary's decisions are fully and correctly set out with supporting authorities in the trial court's opinion. The findings of the referee, which became the findings of the Secretary upon denial of request for review, cannot be upset if supported by substantial evidence. However, with respect to questions of law, including matters of statutory construction and the interpretation of leases or contracts, courts are not bound by the administrative interpretation. Conley v. Ribicoff, 9 Cir., 294 F.2d 190, 194; Henderson v. Flemming, 5 Cir., 283 F.2d 882, 884.

The basic problems here confronting us are questions of law relating to the meaning to be attributed to the words "material participation" as found in 42 U.S.C.A. § 411(a) (1), and the interpretation of the provisions of the lease contract relating to the landlord's participation in the management of production. If the Secretary has misinterpreted or misapplied the law, it is our duty to correct the error.

With respect to arrangement, § 411(a) (1) provides that rentals from real estate shall not be considered self-employment income unless:

"(A) such income is derived under an arrangement, between the owner or tenant and another individual, which provides that such other individual shall produce agricultural or horticultural commodities (including livestock, bees, poultry, and fur-bearing animals and wildlife) on such land, and that there shall be material participation by the owner or tenant in the production or the management of the production of such agricultural or horticultural commodities,"

Social Security pamphlet OASI-33d, with respect to arrangement, states:

"3. Must my arrangement with my tenant be in writing?

"It is not necessary that your arrangement be in writing. It may be oral. In this connection, however, you should bear in mind that you must be able to establish that your arrangement provides for material participation by you, and the existence of such a provision is easier to establish if written.

"4. If I don't have a written arrangement, how can I show that my participation was provided for or contemplated?

"The mutual understanding you had with your tenant is your arrangement. Your understanding is shown by your acts, those of your tenant, how you and your tenant acted in previous years on similar matters, common practices in the area, and statements by you, your tenant, or even third persons who

may know the facts as to how you intended to operate."

■ We agree with the trial court's view that the arrangement provision in the statute clearly contemplates that the landlord be authorized to materially participate in the production or management of production of agricultural commodities and that volunteer services or inspection on the part of the landlord in the absence of any arrangement therefor will not suffice.

■ The important words in the controlling statute are "material participation." The meaning of the word "participation" is not in dispute. The controversy arises with reference to the word "material." The word "material" is a common word having a well-understood meaning. Webster's New International Dictionary, 2d Ed., defines "material" as follows: "Of solid or weighty character; substantial; of consequence; not to be dispensed with; important."

"[T]he 1956 amendment does not demand that the owner settle all the problems or even all the important problems that arise in connection with the operation of the farm, for the word 'participation' denotes joint activity in the entire enterprise and its modifier 'material' only requires that the activity be of substantial value or importance." Conley v. Ribicoff, supra, 294 F.2d 190, 195.

"But the variables of our complex rural economy, well known to Congress, presented other situations in which the owner of the land did much more than furnish the land (and for which he would receive his rental). He might, under the arrangement, determine the crops to be planted, the areas to be cultivated, the time of planting, the fertilization program, and the manner and time of harvesting. If these activities were of a material, i. e., substantial importance from a practical point of view, then the Amendment was to make such ac-

tivities self-employment by the owner and the proceeds income from self-employment." Henderson v. Flemming, supra, 283 F.2d 882, 888.

The legislative history of the statute that we are considering is fully set out in the trial court's opinion. We find nothing in the statute or the legislative history to establish a Congressional intention to give the words "material participation" a strict, unnatural or narrow construction. We believe that the word "material" should be given its common and well-understood meaning.

Courts have generally taken the position that the Social Security Act, including the 1956 amendment, should be liberally construed. Harper v. Flemming, supra; Henderson v. Flemming, supra.

■ The trial court expressed the view that the only record of arrangement is to be found in the written lease. The court then goes on to say:

"Because nearly all farm share-rental arrangements in this area do involve more than a bare rental of real estate, the decisive question to be determined is whether the 1956 amendments to the Act were intended by Congress to encompass most of these situations or only those which involve a substantial degree of landlord participation going considerably beyond the normal amount. The standards set forth by the Social Security Administration clearly require far more than the usual amount of the landlord participation in farm production." 190 F.Supp. 928.

We find no basis in the statute for such a standard. The Act provides coverage for material participation. As pointed out in the trial court's opinion, Social Security coverage has been constantly broadened. We believe that it is the legislative intent as expressed by the words of the statute that a landlord will qualify for coverage if he materially participates in production or management of production regardless of whether many or few landlords qualify. The foregoing

quotation from the trial court's opinion reflects that the court places a qualification upon coverage not contemplated by the statute.

■ Moreover, our examination of the lease, found at pages 928–929 of 190 F.Supp., and the comparison of such lease with others in general use, satisfies us that the lease here used, which was a form specifically prepared by the farm management company, gives the landlord broad management powers and contains provisions not contained in many leases. An important provision of the lease reads:

> "[T]he Tenants agree, without expense to the Landlord, to furnish all necessary tools, machinery, equipment, livestock, crop seeds (including hybrid seed corn), and labor to operate and maintain the farm in a husbandlike manner and *to put in such crops in such manner as the Landlord may direct * * *.*"

Unquestionably the italicized portion of the provision just quoted gives the owner broad managerial powers which go far beyond a provision authorizing the owner to submit a farm plan. In our view this provision authorizes the landlord to direct and supervise the method of preparing the seed bed, the time and method of planting the seed, the amount of seed to be planted per acre, and related matters, which would appear to be substantial managerial functions which would have a material bearing upon production. While plaintiff urges that the words "as the landlord may direct" apply to the tenant's obligation to operate and maintain the farm in a husbandlike manner, she observes that she does not have to rely upon such broad interpretation to prevail. Accordingly, we will not pursue this rather close question of interpretation.

Additional lease provisions give the landlord the right to approve seed planted, to designate fields upon which manure is to be spread as fertilizer, to determine whether meadows or pastures are to be plowed, to direct the clipping of newly sown clover, and the cutting of weeds, and determine whether to participate in Government farm programs. It is apparent to us that the provisions of the lease considered as a whole reserve to the landlord important managerial responsibilities which have a substantial effect upon production and that the exercise of such rights would collectively require numerous and periodical inspections and consultations. The proper seed bed to be prepared for each different crop, the method of seeding, the choice of type of seed best suited to the climate and the soil, the application of manure and other fertilizer at the place where it will prove most effective, the control of weeds, and the participation in Government programs, are items which materially affect the production of agricultural commodities.

The trial court found some support for its views in Conley v. Flemming, D.C. S.D.Cal., 190 F.Supp. 906. This case was reversed upon appeal. Conley v. Ribicoff, 9 Cir., 294 F.2d 190. The opinion of the appellate court strongly supports the plaintiff's position.

Our case of Hoffman v. Ribicoff, 8 Cir., 305 F.2d 1, upon which the Secretary relies, is readily distinguishable. We there determined that the only control the landlord reserved by the lease was to provide a crop plan. As we have heretofore pointed out, the lease before us gives the landlord far greater control. In Hoffman, the court found there was substantial evidentiary support for the finding of want of actual material participation. In our present case the Secretary does not urge that what Midland did does not constitute material participation. In Hoffman we stated that whether there is material participation contemplated by the statute "is a factual determination that can only be made on a case-to-case consideration."

We hold that the lease provided for an arrangement for material participation in the management of production and that the decision of the Secretary and the affirming opinion of the trial court to the contrary were induced by an erro-

neous interpretation of the statute and the lease.

Our decision upon the foregoing issue makes it unnecessary to consider plaintiff's additional contention that the practice of the tenant over a period of years to submit to the broad managerial direction provided by Midland Farm Management Company in the absence of contradictory evidence is in itself sufficient proof of an arrangement under the Secretary's regulations.[1]

Our decision upon the principal issue disposes of the controversy and makes any discussion of the alternate error asserted with respect to denying the petition for remand unnecessary.

The judgment is reversed.

---

1. In support of a petition for remand for additional hearing and further testimony, plaintiff submits a letter from the tenant recognizing the right of Midland to supervise his production activities. Such letter is a part of the record only on the petition for remand issue and we do not rely upon such letter as a basis for reversal.